UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


JULIO MALACHI GARCIA,

     Petitioner,

v.                                                                              CASE NO. 8:23-cv-95-JLB-NHA

SECRETARY, DEPARTMENT
    OF CORRECTIONS,

     Respondent.

_____/

## **O R D E R**

Before the Court is the *pro se* 28 U.S.C. § 2254 petition for habeas

corpus relief filed by Julio Malachi Garcia (Petitioner), who is a prisoner of the

Florida Department of Corrections serving a twenty-year sentence with a ten-

year minimum mandatory for three counts of robbery with a firearm.  (Doc. 1).

At the Court's direction (Doc. 3), Respondent filed a response (Doc. 7), and

Petitioner filed a reply.  (Doc. 13).

Upon careful consideration of the pleadings, the state court record, and

the entire file, the Court concludes that Petitioner is not entitled to federal

habeas corpus relief.[1]

---

[1] Because the Court was able to resolve the petition on the record, an evidentiary
hearing is not warranted. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

## I. BACKGROUND

On the evening of November 6, 2015, Petitioner and two others, each armed with a firearm, robbed three people at the residence of one of the victims.  (Doc. 7-2 at 1036–41).  A jury convicted Petitioner of three counts of robbery with a firearm (Doc. 7-2 at 978–80), and the trial court sentenced Petitioner to 20 years in prison with a ten-year minimum mandatory.  (Doc. 7-2 at 1017–19.  Florida's Second District Court of Appeal (Second DCA) affirmed the conviction and sentence without a written opinion.  (Doc. 7-2 at 1105).

Petitioner filed a motion for postconviction relief under Rule 3.850, Florida Rules of Criminal Procedure (Rule 3.850 Motion) (Doc. 7-2 at 1109–27), which, after an evidentiary hearing, the post-conviction court denied.  (Doc. 7-2 at 1421–42).  The Second DCA affirmed without a written opinion.  (Doc. 7-2 at 1517).

Under the "mail-box rule," *Houston v. Lack*, 487 U.S. 266, 275 (1988), Petitioner filed his *pro se* petition for habeas corpus relief on January 11, 2023. (Doc. 1).  Respondent admits that the petition is timely (Doc. 7 at 2) but argues both that one ground alleges no federal claim and that two grounds are unexhausted, which precludes federal review of the merits of those two grounds.

## A. Ground Three is Denied Because Habeas Review is Limited to a Federal Claim

In Ground Three, Petitioner alleges that the trial court erred in excluding his earlier statement about prior drug sales by state witnesses as an explanation for why he was at the residence of one of the victims.

Section 2254(a) limits federal habeas corpus review to only an allegation "that he is in custody in violation of the Constitution or laws or treaties of the United States." As a general principle, an alleged violation of state law fails to assert a constitutional issue, as *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010), explains:

> But it is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts. The habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). And we have repeatedly held that "'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire,* 502 U.S. 62, 67, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990)). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." 502 U.S., at 67–68, 112 S. Ct. 475.

In excluding Petitioner's earlier statement about the state witnesses' prior drug sales as an explanation for why he was at the home of one of the victims, the trial court ruled as follows:

> I will not allow any prior bad acts or discussions about this home, the alleged victims, the defendant, or any witness for that matter, about prior drug activity.  I'll find that that is improper evidence and not admissible in the trial related to a robbery on a specific date and time.  My inclination right now is that as it goes to the Defense that it may I think in fact be relevant to explain why perhaps Mr. Garcia was there for a reason other than as the Defense states committing a robbery.

(Doc. 7-2 at 307).  At trial and on direct appeal — as well as in his federal petition — Petitioner argued for admissibility of the evidence under the "rule of completeness" under state law.  Notably, Petitioner never asserted — and still does not assert — that the exclusion of the evidence violated a federal right.

As a general principle, an alleged violation of state law fails to assert a constitutional issue because the admissibility of evidence in state court is largely a matter for the state to decide without federal intervention.  *See Marshall v. Lonberger*, 459 U.S. 422, 438, n.6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); *Pinkney v. Sec'y, Dep't of Corr.*, 876 F.3d 1290, 1299 (11th Cir. 2017) ("[I]t is not a federal court's role to examine the propriety of a state court's determination of state law."); *McCullough v. Singletary*, 967 F.2d 530, 535–36 (11th Cir. 1992) ("A state's

interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."). Ground Three fails to assert a federal claim that is entitled to a review on the merits.

### B. Grounds 2 and 4 are Denied as Unexhausted and Procedurally Defaulted

The Antiterrorism Effective Death Penalty Act ("AEDPA") precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b)(1).  Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry*, 513 U.S. 364, 365 (1995).  "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (citing *Duncan*, 513 U.S. at 365–66).  The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before

the state courts, or that a somewhat similar state-law claim was made."). Under the similar doctrine of procedural default, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S.1, 9 (2012).

A petitioner can avoid the application of the exhaustion or procedural default rules by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation. *Spencer v. Sec'y, Dep't of Corr.*, 609 F.3d 1170, 1179–80 (11th Cir. 2010). To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To show "prejudice," the applicant must show "not merely that the errors at his trial created the *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (emphasis in original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). *See Crawford v. Head*, 311 F.3d 1288, 1327–28 (11th Cir. 2002) (recognizing that a petitioner must demonstrate a reasonable probability that the outcome of the proceeding would have differed).

A second exception, known as "fundamental miscarriage of justice," only occurs in an extraordinary case, that is, a circumstance in which a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Murray v. Carrier*, 477 U.S. 478, 479–80 (1986). To meet the "fundamental miscarriage of justice" exception, Petitioner must show constitutional error coupled with "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). This exception is not available unless "petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995) (denying a certificate of probable cause).

Respondent correctly argues both that Grounds Two and Four are unexhausted and that Petitioner meets neither the "cause and prejudice" exception nor the "fundamental miscarriage of justice" exception to qualify for review on the merits.

### 1. Ground Two

Petitioner alleges that trial counsel rendered ineffective assistance during cross-examination by not impeaching Timothy McCurdy (one of the victims) with his prior inconsistent identification of Petitioner as one of the robbers. The postconviction court denied this claim as follows:

Defendant alleges three instances of counsel's improper impeachment with prior inconsistent statements.[2]  First, Defendant alleges that during the initial investigation, McCurdy stated to law enforcement that he didn't know how many assailants there were or what they looked like because he kept his head down the whole time.  However, on direct examination he identified defendant as one of the robbers.  Defendant alleges counsel failed to properly impeach McCurdy with his prior inconsistent statement to law enforcement. . . .

Defendant alleges that the proper method of impeachment with prior inconsistent statements would have damaged McCurdy's credibility to such a degree that Defendant would have been acquitted.

"A defendant is 'not entitled to perfect or error-free counsel, only to reasonably effective counsel.'" *Yarbrough v. State,* 871 So. 2d 1026 (Fla. 1st DCA 2004 (quoting *Waterhouse v. State,* 522 So. 2d 341, 343 (Fla. 1988)).  After careful review of defense counsel's cross-examination of McCurdy, the Court finds counsel did not perform deficiently with regard to impeachment with prior inconsistent statements.  Although counsel's impeachment was interrupted by the prosecutor's objections to the form of the questions, the information comprising the prior inconsistent statements was ultimately presented to the jury.  In his closing statement, defense counsel highlighted each of McCurdy's prior inconsistent statements and argued McCurdy was trying to mislead the jury.  On this record, defense counsel adequately impeached McCurdy with his prior inconsistent statements.  Ground 1 is denied.

(Doc. 7-2 at 1131–32).

Although fairly presented to the postconviction court, Respondent

correctly argues that Petitioner did not fairly present this issue on appeal.  In

---

[2] In the postconviction proceedings Petitioner alleged three instances of counsel's alleged ineffectiveness based on improper impeachment of McCurdy, but in this federal action Petitioner challenges only the first instance of alleged ineffectiveness based on improper impeachment of McCurdy.

his Rule 3.850 motion, Petitioner asserted nine grounds of ineffective assistance of counsel.  In his initial appellate brief, Petitioner argued that the postconviction court erred in denying relief on four of the grounds,[3] but in a total of four paragraphs, the brief simply mentions four additional grounds and never mentions the remaining ground. [4]  Of significance here is that one of the grounds presented in a cursory fashion in the appellate brief — identified as Ground One in the Rule 3.850 motion — asserts the same claim of ineffective assistance of counsel (not properly impeaching McCurdy with his prior inconsistent identification of Petitioner as one of the robbers) that is alleged in Ground Two in the federal petition.  In the answer brief on the postconviction appeal, Respondent argued that, under state procedure, the cursory reference to the issue failed to properly present the issue for appellate review.  (Doc. 7-2 at 1507–08).  The Second DCA affirmed without a written opinion.  (Doc. 7-2 at 1517).

First, Respondent argues that Ground Two remains unexhausted and is procedurally barred because Petitioner did not "fairly present" this ground in

---

[3] Ground Two (Doc. 7-2 at 1469–70); Ground Four (Doc. 7-2 at 1471–77), which is the issue presented in Ground One of the federal petition; Ground Eight (Doc. 7-2 at 1477–79), which is the issue presented in Ground Four of the federal petition; and Ground Three (Doc. 7-2 at 1481–82).

[4] Ground One (Doc. 7-2 at 1479); Grounds Five and Six (Doc. 7-2 at 1479–80); and Ground Nine (Doc. 7-2 at 1481).  Ground Seven in the Rule 3.850 motion was omitted from the appellate brief.

the postconviction appellate brief.  The Court agrees.  *See Duest v. Dugger*, 555 So. 2d 849, 851–52 (Fla. 1990) (stating that merely referring to an issue "without further elucidation" fails to preserve the issue).  Second, Respondent argues that "[t]his Court 'may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits" of this claim.  *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993)." (Doc. 7 at 33–34)  Respondent is correct.  As *Zeigler v. Crosby*, 345 F.3d 1300, 1310 (11th Cir. 2003), explains, state courts are presumed to apply their state procedural rules:

> When a state court issues a summary denial on a claim that is procedurally barred and nothing in the disposition discusses the merits of the federal claim, we "cannot assume that had the [state court] explained its reasoning, it would have reached the merits of [the] claim." *Kight v. Singletary*, 50 F.3d 1539, 1545 (11th Cir. 1995) (citing *Tower v. Phillips*, 7 F.3d 206, 209 (11th Cir. 1993)), *see also, Coleman v. Thompson*, 501 U.S. 722, 111 S. Ct. 2546, 2557, 115 L. Ed. 2d 640 (1991).

Because Respondent argued procedural default in its response to ground one in the postconviction appeal the state argued procedural default — an argument not explicitly rejected by the Second DCA — the state court is presumed to have applied the state's procedural default rules.  *Zeigler*, 345 F.3d at 1310 ("We cannot conclude that the Florida Supreme Court's summary denial of Zeigler's 1994 habeas petition was a decision on the merits.  In responding to Zeigler's 1994 habeas petition, the State's only argument in

response to Zeigler's claims was that the claims were procedurally defaulted."). *See Bennett v. Fortner*, 863 F.2d 804, 807 (11th Cir. 1989) ("[W]hen a procedural default is asserted on appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the procedural default."); *Nichols v. Wainwright*, 783 F.2d 1540, 1542 (11th Cir. 1986) ("[T]his court may presume, in the absence of any evidence to the contrary, tha[t] an established default rule which was briefed to a state court was applied by that court when it affirmed a conviction without opinion."). Consequently, Ground Two in this federal petition is unexhausted and procedurally defaulted.

As discussed, to overcome this procedural default and to warrant a review on the merits Petitioner must meet either the "cause and prejudice" exception or the manifest injustice" exception to the exhaustion requirement. In his reply to the response in this federal action, Petitioner asserts entitlement to the "cause and prejudice" exception (but not the "manifest injustice" exception), contending that appointed appellate counsel "caused" the procedural default by omitting this issue notwithstanding Petitioner's request to include the issue. (Doc. 13 at 13–15).

To the extent the basis for "cause" constitutes an independent constitutional claim — such as ineffective assistance of counsel — Petitioner must have exhausted what he claims excuses his procedural default. "A

showing of ineffective assistance of appellate counsel in failing to raise a claim on direct appeal can constitute 'cause' so long as the ineffective assistance 'occur[red] during a stage when a petitioner had a constitutional right to counsel' and the ineffective-assistance claim itself is 'both exhausted and not procedurally defaulted.'" *Sealey v. Warden, Georgia Diagnostic Prison*, 954 F.3d 1338, 1365 (11th Cir. 2020) (internal citations omitted). *See also Edwards v. Carpenter,* 529 U.S. 446, 453 (2000) (explaining that a federal habeas court is barred from considering a procedurally defaulted "ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim" unless the petitioner establishes "the cause-and-prejudice standard with respect to" the ineffective assistance claim); *Murray v. Carrier*, 477 U.S. at 488–89 (recognizing that, if ineffective assistance of counsel is alleged as cause to excuse a procedural default, the applicant must have presented the claim of ineffectiveness to the state courts as an independent claim); *Hill v. Jones*, 81 F.3d 1015, 1030 (11th Cir. 1996) ("[P]rocedurally defaulted claims of ineffective assistance *cannot* serve as cause to excuse a default of a[nother] claim.") (emphasis in original)). Petitioner never presented to the state courts his claim that appellate counsel was ineffective for omitting the basis for Ground Two. Consequently, Petitioner is not eligible

for the "cause and prejudice" exception.[5]  Ground Two is procedurally barred

and not entitled to a review on the merits.[6]

### 2.  Ground Four

Petitioner was charged with three counts of robbery with a firearm—a

count for each of the three victims.  Each of the three counts was identical

except for the name of the victim.  Petitioner alleges that the trial court erred

by, when charging the jury, not repeating to the jury each charge and all

lesser-included offenses for each victim for all three robbery with a firearm

counts.  The postconviction court discussed Petitioner's similar claim of

ineffective assistance of counsel (not the claim of trial court error alleged in

the federal petition) as follows:

> Defendant alleges the charged offenses and lesser-included
> offenses for each of the three counts were identical except that

---

[5]  Moreover, Petitioner could not possibly meet his burden of proving ineffective
assistance of appellate counsel because he had no right to counsel in the postconviction
appeal.  As *Sealy* 954 F.3d at 1365, explains, the alleged ineffective assistance must have
"occur[red] during a stage when a petitioner had a constitutional right to counsel."
Petitioner's reliance on *Martinez v. Ryan*, 566 U.S. 1 (2012), is misplaced because, under
*Davila v. Davis*, 582 U.S. 521, 528–29 (2017), *Martinez* applies only to the postconviction
initial review stage and does not apply to a postconviction appeal.

[6]  Even if reviewed on the merits, Petitioner would not succeed in showing that the
state court unreasonably determined that counsel was not ineffective.  The postconviction
court ruled that trial counsel "did not perform deficiently with regard to impeachment with
prior inconsistent statements [because] the information comprising the prior inconsistent
statements was ultimately presented to the jury [and, i]n his closing statement, defense
counsel highlighted each of McCurdy's prior inconsistent statements." (Doc. 7-2 at 1132).
Moreover, Petitioner was positively identified as one of the robbers (1) by one of the victims
(who had previously met Petitioner a few time), (2) by an eyewitness who knew Petitioner,
and (3) by another eyewitness.  Consequently, identification of Petitioner as one of the
robbers did not depend wholly on McCurdy's testimony.

> each count pertained to a different victim.  To avoid redundancy and save time, the prosecutor suggested the Court read the common instructions once and inform the jury that the instructions are identical for each count except for the name of the victim.  Defendant alleges defense counsel did not object to this method and the Court followed the prosecutor's suggestion. Defendant alleges this method is improper and erroneous.
>
> . . . .
>
> Each juror received a complete packet of the written jury instructions. The trial judge charged the jury by first reading aloud the standard introduction and statement of the charge.  He then explained the relationship between the three instructions for robbery with a firearm found in the packet and the three counts listed in the statement of the charge.  The judge stated, "These three counts of robbery with a firearm relate to Counts 1, 2, and 3. So the instructions are identical, except for where the listed victim's name is, it has the different names of those individuals. So I'm not going to read all three to you, but as I move along I'll point out the singular difference in each of the instructions where the victim's name is different, okay?"  The judge then proceeded to read aloud through the instructions for robbery with a firearm and the lesser-included offenses, while pointing out the singular difference of the victim's name.  The judge pointed out that the lesser-included offenses were applicable to each of the three charged counts of robbery with a firearm.

(Doc. 7-2 at 1193–94).  Respondent argues that Petitioner failed to exhaust this claim of trial court error alleged in the federal petition.  In reply, Petitioner argues that he presented his claim to the state courts and cites to both the Rule 3.850 motion and the postconviction appellate brief.  The state court record shows that Petitioner fairly presented a claim challenging the method used to charge the jurors by asserting the claim in both his Rule 3.850 motion (Doc. 7-2 at 1122) and his postconviction appellate brief (Doc. 7-2 at

1122).  However, in state court, Petitioner presented the issue as a claim of

ineffective assistance of counsel *for failing to object to* the method used to

charge the jurors; in his federal petition, Petitioner alleges a claim of trial

court error, not ineffective assistance of counsel.  Respondent is correct that

Petitioner did not exhaust his claim of trial court error as alleged in his

petition.  As a consequence, Ground Four in this federal petition is

unexhausted and procedurally defaulted.

In his reply, Petitioner does not attempt to qualify for either the "cause

and prejudice" exception or the "fundamental miscarriage of justice" exception.

Consequently, Ground Four is procedurally barred and not entitled to a review

on the merits.[7]

**\* \* \* \***

Having determined that Grounds Two, Three, and Four are barred

from federal review, only Ground One, which asserts a claim of ineffective

assistance of counsel, is entitled to a review on the merits.

---

[7] In his reply, Petitioner changes his claim from one of trial court error to a claim of ineffective assistance of counsel.  Even if reviewed on the merits, Petitioner would not succeed in showing either that the trial court erred or that the postconviction court erred in ruling that counsel was not ineffective.  The postconviction court ruled (1) that the trial court's method of reading the instructions "was not confusing, contradictory, or misleading" and thus did not violate state law and (2) that "defense counsel did not perform deficiently by failing to object to the manner in which the jury instructions were read aloud . . . ."  (Doc. 7-2 at 1194–95).  The state court record readily demonstrates that neither determination is unreasonable.

## C. Ground One is Denied on the Merits

Under the Antiterrorism Effective Death Penalty Act (AEDPA), federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In this context, "clearly established federal law" consists of the governing legal principles, and not the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. *White v. Woodall*, 572 U.S. 415, 420 (2014); *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is contrary to clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). A decision involves an unreasonable application of clearly established law if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner,

- 16 -

*Brown v. Payton*, 544 U.S. 133, 134 (2005), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) (quoting *Williams*, 529 U.S. at 406).

The Section 2254(d) standard is both mandatory and difficult to meet. To demonstrate entitlement to federal habeas relief, the petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 572 U.S. at 420 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Moreover, when reviewing a claim under Section 2254(d), a federal court must presume that any "determination of a factual issue made by a State court" is correct, and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e). Lastly, "[f]or purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Richter*, 562 U.S. at 101 (italics original) (quoting *Williams*, 529 U.S. at 410).

A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits, warranting deference. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). Generally, in the case of a

silent affirmance, a federal habeas court will "look through" the unreasoned opinion and presume that the affirmance rests upon the specific reasons given by the last court to provide a reasoned opinion. *See Wilson v. Sellers*, 584 U.S. 122, 125 (2018); *Ylst v. Nunnemaker*, 501 U.S. 797, 806 (1991).

*Strickland v. Washington* 466 U.S. 668, 687–88 (1984), establishes a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. A petitioner must establish both that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.* A showing on only one prong will not support an ineffective assistance claim. *Id.* at 687 ("Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.").

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Id.* at 688. In reviewing counsel's performance, a court must adhere to the presumption that "counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689 (citation omitted). A court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a highly deferential level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)

(quoting *Strickland*, 466 U.S. at 690). Proving *Strickland* prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

In Ground One, Petitioner alleges that trial counsel rendered ineffective assistance by not advising him about the possibility of an enhanced penalty as charged in a second amended information filed on the morning of trial. Respondent admits (Doc. 7 at 27) that the Petitioner exhausted this claim in the postconviction proceedings. In summarily denying Petitioner's Rule 3.850 motion, the state postconviction court acknowledged that *Strickland* governs a claim of ineffective assistance of counsel. (Doc. 7-2 at 1189). Because the state court rejected the grounds based on *Strickland*, Petitioner cannot meet the "contrary to" test in Section 2254(d)(1). Petitioner instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts. In determining "reasonableness," the statute limits federal review to determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not to independently assess whether counsel's actions were reasonable. *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001). The presumption of correctness and the highly deferential standard of review require that the analysis of this ground begin with the state court's analysis.

In the amended information, Petitioner was charged with three counts of robbery with a firearm.  The State had offered Petitioner a 15-year plea deal, which Petitioner had not accepted.  Before jury selection began, the State announced that it had filed a second amended information and advised the trial court of the two changes in the new information.  The following exchange occurred:

> THE COURT: Mr. Scotese, have you received a copy of the amended information?
>
> MR. SCOTESE [Defense Counsel]: Not a hard copy, your Honor. It was filed this morning.
>
> THE COURT: Did you take a look at it?
>
> MR. SCOTESE: I did. With the difference I saw, and if I'm wrong I hope the State would correct me, I saw that there was a change in the heading. It's a second amended.
>
> THE COURT: Mr. Jackman, what's the change from the second amended information?
>
> MR. JACKMAN [Prosecutor]: There's actually two changes, Judge. One, we took out the principal language. But that's going to be one of the other things; I'm going to ask for the principal instruction. But the second change is we put the 10-20-life language in the statute, so now he is subject to the 10-20-life, with the language that we substituted in with the statute.
>
> THE COURT: You originally didn't have that in there?
>
> MR. JACKMAN: It was not in there originally.
>
> THE COURT: Okay, Mr. Scotese, did you have an opportunity to talk to your client Mr. Garcia about the 10-20-life statute, and that

- 20 -

if convicted as charged would be for actually carrying; is that correct?

MR. JACKMAN: Correct, Judge.

THE COURT: So the 10-year mandatory prison this sentence. Have you had an opportunity to discuss that with your client, Mr. Scotese?

MR. SCOTESE: Well, your Honor, I thought that information was already in there.

MS. WEISSMAN [Prosecutor]: Your Honor, I merely made it more specific within the body in the text, as well as in the heading of it, that it included 10-20-life.

THE COURT: Yeah, normally it's included in every firearm — robbery with a firearm, so I'm surprised it wasn't in there before I guess as well. But this is a first-degree felony each count, all three counts are punishable by life. So any objection to this, any prejudice to the Defense on the second amended information?

MR. SCOTESE: None comes to mind, your Honor.

THE COURT: All right, and you're waiving formal arraignment, you're ready to proceed to trial; is that right, Mr. Scotese?

MR. SCOTESE: Yes, your Honor.

THE COURT: Okay. So we'll be proceeding in this case on the information charging Mr. Garcia with three life felonies, punishable by life, each being robbery with a firearm or a deadly weapon. All right, Mr. Jackman, anything else?

(Doc. 7-2 at 122–24).

When raised in Petitioner's Rule 3.850 Motion, the postconviction court

rejected this claim as follows:

- 21 -

Defendant alleges defense counsel was ineffective for failing to explain to him the implications of language added in the State's second amended information relating to the 10-20-Life sentencing enhancement.  In support, Defendant alleges that shortly before jury selection began, the State filed its second amended information.  Defendant alleges counsel waived formal arraignment without discussing it with Defendant.  Had he known about the possibility of a minimum mandatory prison term and the possibility of a life sentence, Defendant alleges he would have accepted the State's plea offer of 15 years rather than proceed to trial.  Defendant further alleges the State would not have withdrawn the offer; the Court would have accepted the change of plea; and the plea offer would have resulted in a lesser sentence than the 20-year sentence ordered in this case.

The State responds the record refutes Defendant's claim in that the implications of the 10-20-Life language in the charging information was discussed in open court, with the Defendant present.

The record shows Defendant was present in court when the prosecutor announced the filing of the State's second amended information.  The Court announced the second amended information charged Defendant with three counts of robbery with a firearm or deadly weapon, each count punishable by life with a 10-year mandatory prison sentence. Thus, Defendant was aware of the possibility of a minimum mandatory prison term and the possibility of a life sentence, yet did not seek to accept the State's prior plea offer as he alleges that he would have done.  Defendant's claim fails to satisfy the prejudice prong of *Strickland*.  Ground 4 is denied.

(Doc. 7-2 at 1188–89) (internal footnotes omitted).

Petitioner has not shown that the state postconviction court unreasonably denied his claim.  The prosecutor explained that the purpose of the amendment was to "merely ma[k]e [the 10-20-life provision] more specific;" defense counsel (1) advised the trial court that he thought the

minimum mandatory provision "was already in there," which implies that defense counsel had already discussed the provision with Petitioner, and (2) represented that the amendment did not prejudice the defense. The postconviction court denied this claim for lack of prejudice, finding that Petitioner had the opportunity to object to the amendment but proceeded to trial knowing he faced a minimum mandatory sentence of ten years. The impact of the minimum mandatory provision is diminished by Petitioner's retrospective willingness to accept a sentence of 15 years' imprisonment.[8]

In this federal action, Petitioner focuses more on the deficient performance prong of *Strickland* and not the prejudice prong. But as explained above, *Strickland* requires proof of both prongs. The postconviction court ruled that Petitioner did not meet the prejudice prong. Although Petitioner certainly disagrees with the state postconviction court's ruling, under Section 2254(d), this federal court must defer to the state court's ruling unless that ruling was "unreasonable." And as explained above, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Richter*, 562 U.S. at 101 (italics original) (quoting *Williams*, 529 U.S. at 410). The Court finds no such unreasonable application here.

---

[8] Petitioner always faced the possibility of a sentence of life imprisonment.

Petitioner has a high hurdle to overcome to warrant federal habeas relief based on a claim of ineffective assistance of counsel because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105; *see also Dunn v. Reeves*, 594 U.S. 731, 739 (2021) ("This analysis is 'doubly deferential' when, as here, a state court has decided that counsel performed adequately."); *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011) (An applicant must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."); *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) ("Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'") (quoting *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011)); *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is 'doubly deferential.'").

"And in reviewing the work of their peers, federal judges must begin with the 'presumption that state courts know and follow the law.' Or, in more concrete terms, a federal court may grant relief only if *every* 'fairminded juris[t]' would agree that *every* reasonable lawyer would have made a different

- 24 -

decision." *Reeves*, 594 U.S. at 739–40 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002), and *Richter*, 562 U.S. at 101) (italics and brackets original). This federal court cannot say that the state court's rejection of Petitioner's Ground One was an unreasonable application of *Strickland* or was based on an unreasonable determination of facts.

## II.  CONCLUSION

Based on the foregoing, Petitioner is not entitled to habeas relief. Accordingly, it is **ORDERED** that:

1.  The 28 U.S.C. § 2254 petition (Doc. 1) filed by Julio Malachi Garcia is **DENIED**.

2. The Clerk is **DIRECTED** to enter judgment in favor of Respondent and against Petitioner, terminate any pending motions, and close this case.

## Certificate of Appealability[9]

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1). Rather, a district court or circuit justice or judge must first issue a certificate of appealability (COA).  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

---

[9] Under Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

§ 2253(c)(2).  To make this substantial showing, a petitioner "must demonstrate [either] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel,* 529 U.S. 473, 484 (2000), or that "the issues presented [are] adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003).

Upon consideration of the record, the Court declines to issue a COA. Because Petitioner is not entitled to a COA, he is not entitled to appeal *in forma pauperis.*

**DONE and ORDERED** in Tampa, Florida, on March 16, 2026.

_____
**JOHN L. BADALAMENTI**
UNITED STATES DISTRICT JUDGE